Anali Cortez Bulosan #307692
Estella M. Cisneros #287733
Felipe Rojas-Flores #333977
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
3747 E. Shields Ave.
Fresno, CA 93726
(559) 441-8721
(559) 441-0724 - fax

*Attorneys for* Plaintiffs Manuel Perez and Macario Perez

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL PEREZ and MACARIO PEREZ,<br><br>Plaintiffs,<br><br>v.<br><br>ALL AG, INC., a California Corporation, GOLDCOAST FARMS, LLC, a limited liability company, and MEANS NURSERY, INC., an Oregon Corporation, and DOES 1 through 10 Inclusive,<br><br>Defendants. | Case No.: 1:18-cv-00927-DAD-EPG<br><br>**PLAINTIFFS' MOTION FOR APPROVAL OF PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Complaint Filed: July 9, 2018**<br><br>**HEARING DATE: June 15, 2021**<br>**TIME: 9:30 AM**<br>**LOCATION: Courtroom 5** |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 15, 2021, or as soon as the matter may be heard in Courtroom 5, of the above-entitled Court, Plaintiffs MANUEL PEREZ and MACARIO PEREZ ("Plaintiffs") move, unopposed, for an order approving the PAGA Settlement Agreement ("the Agreement") reached between the Parties, as fair, reasonable, adequate and in the interests of the Plaintiffs and other current and former employees of Defendants pursuant to Lab. Code sections 2699(l)(2) and 2699.3(b)(4), the Private Attorney Generals Act ("PAGA"). With the filing of this motion, Plaintiffs have simultaneously submitted a copy of the PAGA Settlement Agreement and motion papers to the Labor Workforce Development Agency ("LWDA") as required by Lab. Code section 2699(l)(2).

Pursuant to the terms of the Agreement, the Parties request the Court retain jurisdiction over this matter to enforce the terms of the PAGA Settlement Agreement.

This motion is brought pursuant to California Labor Code section 2699(l) and is based upon the supporting Memorandum of Points and Authorities filed concurrently with this Notice; the supporting Declaration of Estella M. Cisneros; the records, pleadings, and papers filed in this action, and upon such argument as may be presented to the Court at the hearing on this motion.

Date: May 18, 2021                                                          **CALIFORNIA RURAL LEGAL ASSISTANCE, INC.**

_____/s/_____
Estella M. Cisneros
Anali Cortez Bulosan
Felipe Rojas-Flores
Attorneys for Plaintiffs

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.       **INTRODUCTION**

Plaintiffs hereby move, unopposed, for approval of the settlement for Plaintiffs' claim brought under the California Private Attorneys General Act of 2004, Cal. Lab. Code section 2698, *et seq.* ("PAGA").  Pursuant to section 2699, Plaintiffs have concurrently submitted a copy of this settlement agreement and motion briefing to the Labor and Workforce Development Agency ("LWDA").

Plaintiffs worked as nursery workers for Defendants and allege Defendants failed to pay them for work they performed as required by California law, the Fair Labor Standards Act, 26 U.S.C. sections 201 *et seq.* (hereinafter "FLSA") and/or the PAGA.  Plaintiffs further alleged that Defendants failed to: (1) pay the state minimum wage; (2) reimburse business expenses; (3) pay all overtime wages due; (4) pay Plaintiffs all wages owed at the time of discharge; (5) provide necessary tools and equipment; and (6) provide accurate wage statements.  Plaintiffs filed this action on behalf of themselves and other workers to secure and vindicate their rights under the FLSA, seeking relief pursuant to 29 U.S.C. section 216(b) for and on behalf of themselves and other employees similarly situated who were injured by Defendants' conduct and employed as nursery workers with Defendants from February 2015 through the present. Plaintiffs also filed this action on behalf of themselves as well as other current or former employees pursuant to the PAGA. Plaintiffs alleged that Defendants' practices constituted unfair business practices under California's Unfair Competition Law, Bus. & Profs. Code sections 17200, *et seq*. Plaintiffs further complained that Defendants' violation of state labor laws were unlawful acts which had afforded Defendants an unfair competitive advantage.

Defendants dispute and deny any and all of Plaintiffs' claims and have asserted defenses to the claims alleged in the Complaint and deny any and all liability arising out of the conduct alleged in the Complaint.

To date, the Parties have engaged in formal discovery and investigation, including depositions and written discovery.  On April 30, 2019, the Parties participated in a full-day settlement conference before Magistrate Judge Jeremy D. Peterson during which they agreed to settle this lawsuit.  Counsel for Plaintiffs, Plaintiffs, counsel for Defendants and Defendants were present.  On July 8, 2019, the parties

had a second settlement conference before Judge Peterson to resolve several remaining issues that were not resolved at the first conference.

On July 26, 2019, Plaintiffs moved for the Court to approve a settlement agreement regarding the PAGA Claims and the Plaintiffs' Individual Claims ("First Settlement Agreement"). On April 17, 2020, the Court denied the Plaintiffs' motion to approve the First Settlement Agreement and explained its concerns. Since the Court's denial of the Plaintiffs' motion to approve the First Settlement Agreement, the Parties have discussed and agreed on how to address the Court's concerns and have finalized and signed an agreement that resolves Plaintiffs' PAGA claims ("PAGA Settlement Agreement"), a copy of which is attached to the Declaration of Estella M. Cisneros as Exhibit 1 (Cisneros Decl.). The Parties have also reached a private settlement agreement to resolve Plaintiffs' individual claims, a copy of which can be made available to the Court if it so requests (Cisneros Decl. at ¶ 10). This motion requests Court approval pursuant to Cal. Lab. Code § 2699(l)(2). For the reasons outlined below, Plaintiffs request the Court enter an order approving the settlement and retaining jurisdiction over the settlement until all terms of the agreement are completed.

## II.  PLAINTIFFS' PAGA CLAIMS AND DEFENDANTS' CLAIMS

Plaintiffs were nursery workers employed by Defendants. Plaintiffs are informed and believe they were jointly employed by all Defendants. Defendant All Ag Inc. ("All Ag") was a licensed farm labor contractor who Plaintiffs' alleged supplied Defendants Gold Coast Farms LLC ("Gold Coast") and Means Nursery, Inc. ("Means") with workers to perform labor, cultivating and preparing ornamental plants for retail for Defendants Gold Coast and Means.

Defendants employed Plaintiff Manuel Perez from May 2013 through November 21, 2017 and Plaintiff Macario Perez from May 2013 to December 4, 2017.[1] Both Plaintiffs were hourly workers who worked more than eight hours a workday and/or more than forty hours per workweek depending on seasonal variations at Gold Coast in Woodlake, California. They alleged they were not properly compensated for all work they performed for Defendants.

---

[1] Plaintiff Macario Perez has worked for Gold Coast and Means since April 2001.

Plaintiffs were tasked with cultivating and growing ornamental plants as covered by Industrial Welfare Commission ("IWC") Order No. 14-2001. From 2013 through 2018, Wage Order 14 required overtime pay after 10 hours in a workday and/or 60 hours in a workweek.[2] However, Plaintiffs were also tasked with work covered by IWC Order 8-2001 and/or 13-2001[3], which both require overtime after 8 hours/workday or 40 hours/workweek, in that they had to fill plant orders placed by third parties by preparing the plants for shipping and retail. Plaintiffs prepared plants for retail by attaching a picture label, price, and barcode to the plant right before shipment. Plaintiffs were also tasked with driving forklifts to load prepared plants on shipping trucks which traveled directly to stores such as Lowe's or Home Depot. This work was primarily done in the high sales season of approximately mid-February through August.

In terms of the PAGA claims, Plaintiffs alleged Defendants violated Cal. Lab. Code sections 510, 558, 1194, 1197, and 8 Cal. Code Regs. section 11080 *et seq.* by failing to pay Plaintiffs and other current and former employees all wages due for all hours worked; Lab. Code section 226 by failing to provide Plaintiffs and other current and former employees with an accurate itemized wage statement; Lab. Code sections 201 and 202 by failing to pay Plaintiffs and other current and former employees all wages due on the date of the employee's involuntary termination or within 72 hours of receipt of notice of a voluntary termination; Lab. Code section 2802 by failing to provide and maintain necessary tools and equipment to Plaintiffs and other current and former employees; and provisions of IWC Wage Order 8

---

[2] The difference in overtime pay for employees under Wage Order 14 versus other wage orders will be an issue until January 1, 2025, when all employees under Wage Order 14 will be paid overtime after 8 hours in a workday and/or 40 hours in a workweek. The new overtime law for Wage Order 14 employees is being phased in until then, starting on January 1, 2019, with employers employing 26 workers or more being required to pay their workers overtime after 9.5 hours a workday and/or 55 hours a workweek. 8 C.C.R. § 11140(3); *see* Dep't of Indus. Relations, *Overtime for Agricultural Workers* (Jan. 2019) https://www.dir.ca.gov/dlse/Overtime-for-Agricultural-Workers.html.

[3] Both Wage Order 8 and 13 govern working conditions for industries handling products after harvest. However, Wage Order 8 governs working conditions for industries preparing agricultural products after harvest where the grower processes both his or her own products and the products of any other employer. *See* Division of Labor Standards Enforcement, *Which IWC Order? Classifications*, 22 (March 2013). As the parties reached an agreement, Plaintiffs did not need to determine which of the two Orders applied in this case. Nevertheless, their effect on how overtime is calculated is the same, i.e., after 8 hours in a workday and/or after 40 hours in a workweek.

---

and/or 13 by failing to pay the applicable minimum wage, failing to provide and maintain necessary tools and equipment and failing to keep accurate information with respect to hours worked and applicable rates of pay.

Defendants dispute and deny any and all of Plaintiffs' claims and asserted defenses to the claims alleged in the Complaint and deny any and all liability arising out of the conduct alleged in the Complaint.

### III. TERMS OF THE PAGA SETTLEMENT AGREEMENT

The instant settlement agreement resolves the PAGA claims Plaintiffs alleged in a representative capacity in their Second Amended Complaint (Dkt. No. 22, p. 15, ¶¶ 89 - 91) and any resulting attorneys' fees and costs.[4]

####    A.    Monetary Terms

Defendants have agreed to pay a total of $104,000.00 to resolve the PAGA claims alleged in the lawsuit as well as attorneys' fees and costs ("Settlement Amount") related to the PAGA claims. Out of the Settlement Amount, a total of $24,000.00 shall be allocated to Plaintiffs' Counsel as attorneys' fees and costs for prosecution of the PAGA claims against Defendants. The amount allocated to the PAGA Settlement Group Members, which totals approximately 206 employees ("PAGA Settlement Group Members"), is $80,000.00, less administrator costs, which will be divided among the employees on a pro rata basis as detailed below. The Parties agreed that the Settlement Claims Administrator costs will be part of the $80,000.00 allocated to the PAGA Fund, with the total cost not to exceed $4,000.00.

The PAGA Fund will be distributed 75% to the LWDA and 25% to the PAGA Settlement Group Members in accordance with Labor Code section 2699(i) on a pro rata basis based on the number of workweeks he or she worked for Defendants from July 9, 2017 through the Court Approval Date, relative to the total number of workweeks all PAGA Settlement Group Members worked for Defendants during this time. Payment to the LWDA would be payable within 14 days after the Settlement Administrator's receipt of funds from Defendants. This payment, along with a copy of the Order approving this Agreement, would be sent to the LWDA.

//

---

[4] As indicated above, the Parties have also reached a private settlement agreement to resolve Plaintiffs' individual claims, a copy of which can be made available to the Court if it so requests.

PLAINTIFFS' NOTICE OF AND MOTION FOR APPROVAL OF PAGA SETTLEMENT;    - 6
MEMORANDUM OF POINTS AND AUTHORITIES

### B. Non-Monetary Settlement Terms

Defendant Gold Coast agrees that it will continue to pay all of its employees working at the Woodlake Location, located at 32701 Road 204, Woodlake, California 93286, overtime after eight hours in a workday and/or 40 hours in a work week. Defendant Gold Coast agrees to notify all new employees in writing, in both English and Spanish, of its overtime policy upon hire.

Defendant Gold Coast agrees to send Plaintiffs' Counsel an annual certification from the Court Approval Date to January 1, 2023, due January 1st of each applicable year, certifying that it has paid overtime after eight hours in a workday and/or after 40 hours in a workweek to all employees working at the Woodlake Location. The certification will also certify that Defendant Gold Coast has notified any new employees of its overtime policy.

Plaintiffs and Plaintiffs' Counsel agree they will not issue any press or other media release, including postings on social media, that discloses the identity of Defendants or their owners, officers, directors, agents, or trustees. Should Plaintiffs or Plaintiffs' Counsel decide to publicize the terms of the results of this action, they will limit their description of Defendants as a large nursery and a farm labor contractor in the San Joaquin Valley.

### C. Release of Claims Against Defendants

Upon entry of the Court's Order approving the Settlement, Plaintiffs, all PAGA Settlement Group Members, and the State of California shall be deemed to have fully, finally, and forever waived, released, relinquished, and discharged Defendants and each and all of the Released Parties from any and all claims seeking civil penalties under Labor Code § 2698 et. seq. that were asserted in the Second Amended Complaint, which includes Labor Code §§ 201, 202, 226, 226.3, 510, 558, 1194, 1194.2, 1197, 1197.1, 2802, 8 Cal. Code Regs. §§ 11080, *et seq.*, and Industrial Welfare Commission Wage Orders Nos. 8 and/or 13, against Defendants for the time period of July 9, 2017 through the Court Approval Date. It is also expressly understood and agreed that this limited release would not release Defendants from liability for, nor act as a waiver of, any claims the nonparty PAGA Settlement Group Members may have or assert against Defendants for alleged violations of any statute other than PAGA.

//
/

D.  PAGA Claims Administration Process

No later than 10 days after the Court Approval Date, Defendants would provide the Settlement Administrator with a list of all PAGA Settlement Group Members, including their full name; most recent mailing address and telephone number; Social Security number; the hire and termination dates, and any other relevant information needed to calculate settlement payments.

No later than 10 days before the Settlement Administrator would send out notices as explained below, the Settlement Administrator will send the Parties a spreadsheet showing the amounts the Settlement Administrator calculated are due to each PAGA Settlement Group Member. The Parties agree that for employees of Defendant Gold Coast who were not previously employed by Defendant All Ag, only the employee identification numbers and the amount due to each will be listed on the spreadsheet. The Parties agree that for all other employees, only the name and amount due to each will be listed on the spreadsheet.

The Settlement Administrator will then mail a notice of the settlement, attached as Exhibit A to the PAGA Settlement Agreement, in English and Spanish, to each PAGA Settlement Group Member, along with his or her pro rata portion of the settlement, within 30 days of receipt of the PAGA Settlement Group Member List sent by Defendants. Should any of the notices and payments be returned as undeliverable, the Settlement Administrator will have 30 days after the notice and payment are returned to search for a more current address for the individual and to re-mail the notice and payment to the traced address. Checks issued to PAGA Settlement Group Members pursuant to this Agreement would expire 180 days from the date they are issued. Any uncashed checks would escheat to the State of California 200 days from the date of issuance. The Settlement Administrator will send a copy of the Settlement Agreement to the California State Controller's Office, along with the funds from all uncashed checks. No later than 260 days after all checks have been disbursed, the Settlement Administrator will notify the Parties of the total amount disbursed to PAGA Settlement Group Members and the total amount disbursed to the LWDA.

///

//

/

## IV. STANDARD OF REVIEW

Passed in 2003, PAGA allows a private plaintiff, as an aggrieved employee, to bring a civil action personally and on behalf of other current or former employees to recover civil penalties for California Labor Code violations. *See* Cal. Lab. Code § 2699(a).

> As explained by the LWDA: … PAGA benefits the public by augmenting the state's enforcement capabilities, encouraging compliance with the Labor Code provisions, and deterring noncompliance. This furthers the state's policy to protect workers from substandard and unlawful conditions and also to protect employers 'who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards.'

*O'Connor v. Uber Techs., Inc.*, 201 F.Supp. 3d 1110, 1132-1133 (N.D. Cal. 2016) (quoting the LWDA Resp. at 2). "The California Supreme Court has also recognized that 'PAGA was clearly established for a public reason'…" *Id.* at 1133 (quoting *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014).

Under Cal. Lab. Code section 2699(l)(2), courts "shall review and approve any settlement of any civil action filed pursuant to [the PAGA]." Additionally, the proposed settlement must be simultaneously submitted to the LWDA when it is submitted to the court. Cal. Lab. Code § 2699(1)(2).[5] In a related provision of the PAGA statute, which addresses PAGA claims based on alleged health and safety violations specifically, the statute states that courts "shall review and approve any proposed settlement . . . to ensure that the settlement provisions are at least as effective as the protections or remedies provided by state and federal law or regulation for the alleged violation." Cal. Labor Code § 2699.3(b)(4).

The PAGA statute, however, does not set forth an express standard for settlement approval. "'Neither the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the [LWDA] has provided any definitive answer' as to what the appropriate standard is for approval of a PAGA settlement." *Jordan v. NCI Grp., Inc.*, No. EDCV 16-1701 JVS (SPx), 2018 U.S.

---

[5] There are other procedural requirements under PAGA before a PAGA claim can be filed with the court. *See* Cal. Lab. Code § 2699.3; *see also Arias v. Super. Ct.*, 46 Cal. 4th 969, 981 (2009) (the Court explained the steps required by Cal. Lab. Code section 2699.3 which includes giving written notice of the alleged Lab. Code violation to both the employer and the LWDA). Plaintiffs sent written notice to the Defendants in this case and to the LWDA on May 17, 2018. Dkt. 22, ¶ 92.

Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018) (quoting *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2018)).

In determining whether the parties' $1 million PAGA allocation should be approved, the court in *O'Connor* used the following guidance provided by the LWDA at the Court's request:

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being fundamentally fair, reasonable, and adequate with reference to the public policies underlying the PAGA.

*O'Connor*, 201 F.Supp. 3d at 1133 (quoting LWDA Resp. at 2-3).

Several federal district courts since *O'Connor*, recognizing the lack of appropriate standard to review a PAGA settlement, have adopted the *O'Connor* language to review PAGA settlements. *See Orr v. Wal-Mart Stores*, No. 2:18-CV-00914-JAM-AC, 2019 U.S. Dist. LEXIS 101948, at *4-5 (E.D. Cal. June 17, 2019) ("…a settlement should be approved if it is 'fair and adequate in view of the purposes and policies of the statute'…'genuine and meaningful, [and] consistent with the underlying purpose of the statute to benefit the public…'" (quoting *O'Connor*, 201 F.Supp. 3d 1110 and *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016)); *see also Jordan v. NCI Grp., Inc.*, No. EDCV 16-1701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018) ("Nonetheless, the Court adopts the standard for evaluating PAGA settlements recently employed by a number of other district courts in the Ninth Circuit – that is, the Court will approve the PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of the PAGA's policies and purposes."); *see also Flores v. Starwood Hotels & Resorts Worldwide*, 253 F.Supp. 3d 1074, 1077 (C.D. Cal. 2018) ("…the Court is satisfied that the parties' settlement is 'fair and adequate in view of the purposes and policies of the statute.'"); *see also Viceral*, 2016 U.S. Dist. LEXIS 140759, at *27 ("Accordingly, it is 'important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, [and] consistent with the underlying purpose of the statute to benefit the public.'").

This Court has also recently adopted the standard expressed in *O'Connor* in *Ruiz v. Wal-Mart Stores*, No. 1:17-cv-00812-DAD-JLT, 2019 U.S. Dist. LEXIS 4249, at *5-6 (E.D. Cal. Jan. 8, 2019).

Recognizing the differences between a class action and a PAGA claim, this Court was persuaded by the LWDA's reasoning in *O'Connor* and stated, "the [C]ourt will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory requirements set forth by PAGA and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Id.*

### A. Plaintiffs have satisfied the PAGA Statutory Requirements.

Here, Plaintiffs have met the statutory requirements set forth by the PAGA. Plaintiffs mailed a written notice of the alleged California Labor Code violations to both the Defendants and the LWDA on May 17, 2018 and have not heard any response from the LWDA to date (Cisneros Decl. at ¶ 11). Plaintiffs also simultaneously submitted this proposed settlement to the LWDA when Plaintiffs submitted this motion to the Court. Accordingly, the statutory requirements have been met.

### B. The Settlement Agreement is Fundamentally Fair, Reasonable, and Adequate in View of the PAGA's Public Policy Goals.

As explained above, the PAGA Settlement consists of both monetary and injunctive relief. Defendant Gold Coast[6] has agreed to continue to pay its current and future employees' overtime after eight hours in a workday and/or forty hours in a workweek as part of the settlement. Starting January 1, 2023, all employers with 26 or more employees, including Defendant Gold Coast, will be required to pay agricultural workers subject to Wage Order 14 overtime after 8 hours in a workday and/or 40 hours in a workweek. 8 C.C.R. § 11140(3) (*see* Dep't of Indus. Relations, *Overtime for Agricultural Workers* (Jan. 2019) https://www.dir.ca.gov/dlse/Overtime-for-Agricultural-Workers.html). As such, the certification Gold Coast has agreed to provide Plaintiffs' counsel of this policy will cease on January 1, 2023.

These terms further PAGA's public policy goals as they compensate current and future employees on the primary issue the lawsuit involves, a dispute on whether the PAGA Settlement Group Members were owed overtime compensation for performing work under Wage Order 8 and/or 13 versus Wage Order 14. Defendants have consistently disputed whether any worker is entitled to overtime wages and whether Defendant Means and Defendant Gold Coast were joint employers or

---

[6] As Defendant All Ag has ceased its business operations, it is no longer subject to the agreement's injunctive relief.

liable for the violations alleged in Plaintiffs' complaint. The issue of whether an employee is entitled to overtime wages for work performed at the Woodlake location will no longer be an issue as Defendant Gold Coast has agreed to pay all workers working at the Woodlake location, irrespective of the type of work performed, overtime after eight hours in a workday and/or forty in a workweek.[7] This term is significant in enforcing PAGA's public policy purposes as an entire workforce is now protected from the alleged overtime premium violations.

Additionally, the $80,000.00 (less administration costs) amount allocated to the PAGA Settlement Group Members is fair, reasonable, and adequate. *See Orr*, 2019 U.S. Dis. LEXIS 101948, at *5 ("There is no fixed percentage that must be allocated to PAGA…Courts have approved PAGA penalties in percentages significantly less than…2.22%..."). Based on the estimated total liability for Defendants for Plaintiffs' PAGA claims as of May 13, 2021, which Plaintiffs' counsel has estimated to be $155,100.00 (Cisneros Decl. at ¶ 14), the approximate $76,000.00 amount represents a 49% recovery for the PAGA Settlement Group Members.

The approximate number of individuals who would qualify as PAGA Settlement Group Members was identified through the exchange of payroll and other timekeeping records as part of Plaintiffs' discovery requests prior to April 30, 2019, the date the parties first agreed to settle the matter, and voluntarily by Defendants between that date and when the parties finalized the PAGA Settlement Agreement which is before the Court for approval, including after the Court denied Plaintiffs' motion to approve the First Settlement Agreement on April 17, 2020. (Cisneros Decl. at ¶ 12). Furthermore, the parties do not anticipate the number of PAGA Settlement Group Members to increase in any significant number for several reasons, even though the applicable release period would not close until the day the Court approves the PAGA Settlement. First, since April 30, 2019, Defendant All Ag has ceased operating as a business (Cisneros Decl. at ¶ 13). Second, while Gold Coast engaged in some direct hiring after All Ag ceased operating, those employees are included in the 206 PAGA Settlement Group Members (*Id*.).

Lastly, the $24,000.00 allocated to Plaintiffs' attorneys' fees and costs is also reasonable. A prevailing employee is entitled to an award of reasonable attorneys' fees and costs incurred in an action

---

[7] As of January 1, 2025, all Wage Order 14 employees will be entitled to overtime pay after 8 hours in a workday and/or 40 hours in a workweek. 8 C.C.R. § 11140(3)(A)(3)(d).

under PAGA. Cal. Lab. Code § 2699(g)(1). A court has discretion to utilize either the lodestar method or percentage-of-recovery method. *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011). Under the percentage of the fund method, a court can award counsel a percentage of the common fund recovered for the class. In the Ninth Circuit, the benchmark is 25%. *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007, 1047-48. The lodestar method looks at the number of hours the prevailing party reasonably spent litigating the case multiplied by a reasonable hourly rate for counsel. *Bluetooth*, 654 F.3d at 941. Courts can cross-check the appropriateness of their chosen amount by employing the other as well. *Bluetooth*, 654 F.3d at 944.

Under both methods, the $24,000.00 in attorneys' fees and costs for prosecution of the PAGA claims is a reasonable amount. The $24,000.00 represents 23% of the total $104,000.00 common fund. As a cross-check, to date, Plaintiffs' counsel has incurred 543.45 billable hours attributable to the prosecution of the PAGA claims, amounting to over $133,155.00 in attorneys' fees (Cisneros Decl. at ¶¶ 30-33). Additionally, Plaintiffs' counsel incurred $3,403.25 in recoverable costs as part of litigating the PAGA claims (*Id*. at ¶¶ 34-37).

Taken together, the $104,000.00 monetary recovery along with the injunctive relief Defendant Gold Coast has already implemented and will continue to implement presents a fair, reasonable and adequate settlement given the purpose of PAGA, which is to "achieve maximum compliance with state labor laws' and to 'ensure an effective disincentive for employers to engage in unlawful and anticompetitive business practices.'" *Orr* 2019 U.S. Dis. LEXIS 101948, at *5 (internal citation omitted). This relief will disincentivize employers from engaging in unlawful and uncompetitive business practices and protect both current and future Gold Coast employees.

## V. CONCLUSION

For the reasons set for above, Plaintiffs respectfully request the Court grant approval of this settlement.

///

///

//

/

| | |
|---|---|
| Date: May 18, 2021 | **CALIFORNIA RURAL LEGAL ASSISTANCE, INC.** |
| | |
| | _____/s/_____ |
| | Estella M. Cisneros |
| | Anali Cortez Bulosan |
| | Felipe Rojas-Flores |
| | Attorneys for Plaintiffs |

# CERTIFICATE OF SERVICE

I, Dolores Curiel, declare as follows:

I am employed with the law offices of CALIFORNIA RURAL LEGAL ASSISTANCE, INC. My business address is 3747 E. Shields Ave, Fresno, California 93726. I am over the age of 18 years of age, and not a party to this action.

On May 18, 2021, I served the foregoing document entitled:

**PLAINTIFFS' MOTION FOR APPROVAL OF PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

by serving in the manner and/or manners described below to each of the parties herein listed:

Justin T. Campagne, Esq.
jcampagne@campagnelaw.com
**Campagne & Campagne**
1685 N. Helm Ave.
Fresno, CA 93724

Erica L. Rosasco
Erica@mckaguerosasco.com
**McKague Rosasco, LLP**
1217 Pleasant Grove Blvd., Ste 120
Roseville, CA 95678

[ ] BY MAIL in accordance with Federal Rules of Civil Procedure, Rule 5 as follows:
I am readily familiar with this firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under the practice the correspondence would be deposited with the United States Postal Service on that same day in the ordinary course of business with postage thereon fully prepaid at Fresno, California. Such envelope was sealed and placed for collection and mailing following ordinary business practices.

[ ] BY PERSONAL SERVICE I caused delivery of such envelope(s), by hand, to the office(s) of the above listed addressee(s).

[X] **BY ELECTRONIC MAIL**, I caused such documents to be scanned into PDF format and sent via electronic mail to the electronic mail addressee(s) of the addressee(s) designation, in accordance with the CM/ECF Electronic Mail Notice List (whose consent in writing to such service method):
**jcampagne@campagnelaw.com; Erica@mckaguerosasco.com**

[ ] BY FACSIMILE by transmitting from my business address a true copy thereof from sending facsimile number (559) 441-0724 addressed to the receiving facsimile numbers on the attached service list at (559) 252-9617. A true copy thereof was transmitted by facsimile and the transmission reported complete without error.

[X] (FEDERAL) I declare that I am employed in this office of a member of the bar of this court at whose direction this service was made.

Executed on May 18, 2021, Fresno, California.

DOLORES CURIEL

CERTIFICATE OF SERVICE - Case No.: 1:18-CV-00927 DAD-EPG        Page 1