UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL PEREZ and MACARIO PEREZ,<br><br>    Plaintiffs,<br><br>  v.<br><br>ALL AG, INC., *a California corporation*; *et al.*,<br><br>    Defendants. | No. 1:18-cv-00927-DAD-EPG<br><br>ORDER GRANTING MOTION FOR APPROVAL OF PAGA SETTLEMENT AGREEMENT<br><br>(Doc. No. 54) |

This matter is before the court on the unopposed motion for approval of the parties' settlement agreement of plaintiffs' claims under the Private Attorneys General Act ("PAGA") filed by plaintiffs Manuel Perez and Macario Perez on May 18, 2021. (Doc. No. 54.) Pursuant to General Order No. 617 addressing the public health emergency posed by the coronavirus outbreak, the court took the motion under submission to be decided on the papers. (Doc. No. 55.) Having considered the unopposed motion, the court will approve the settlement agreement.

## BACKGROUND

Defendants Means Nursery, Inc. ("Means Nursery") and Gold Coast Farms, LLC ("Gold Coast") cultivate and prepare ornamental plants for distribution to third-party retailers, and they hired defendant All Ag, Inc. ("All Ag"), a licensed farm labor contractor, to supply workers and process payroll at Gold Coast's Woodlake, California nursery in Tulare County. (Doc. Nos. 22 at

¶¶ 8, 28–30; 54 at 4.)  Plaintiffs were employed by defendants as nursery workers at the Woodlake nursery; Manuel Perez worked for defendants from approximately May 2013 through November 21, 2017, and Macario Perez worked for defendants from approximately May 2013 through December 4, 2017.  (Doc. Nos. 22 at ¶¶ 8–9; 54 at 4.)

On July 9, 2018, plaintiffs initiated this wage-and-hour lawsuit against defendants.  (Doc. No. 1.)  In their operative second amended complaint, plaintiffs allege ten causes of action under California's Labor Code, Business and Professions Code, Unfair Competition Law, and the Private Attorney General Act ("PAGA"), as well as the federal Fair Labor Standards Act ("FLSA").  (Doc. No. 22.)  Plaintiffs do not assert any class claims nor do they seek to represent a putative class.  Rather, plaintiffs assert their individual state law labor code claims and also seek to represent an FLSA collective "pursuant to 29 U.S.C. § 216(b), for all workers who were similarly situated to [p]laintiffs and who were not paid overtime wages in violation of the FLSA from three years preceding the filing of this complaint through the present."  (Doc. Nos. 22 at 16; 54 at 3.)  As to their PAGA claim, plaintiffs assert that they are "aggrieved employees" and seek civil penalties for labor code violations on behalf of themselves and other current or former employees of defendants pursuant to California Labor Code § 2699(a).  (Doc. Nos. 22 at 15–16; 54 at 3.)

Following settlement conferences with U.S. Magistrate Judge Jeremy D. Peterson on April 30, 2019 and July 8, 2019, the parties agreed to settle this case.  (Doc. Nos. 31, 39.)  On July 26, 2019, plaintiffs filed a motion for approval of the parties' PAGA settlement agreement, which the court denied without prejudice on April 17, 2020 due to several expressed concerns.  (Doc. Nos. 40, 50.)  In that order, the court strongly encouraged the parties to continue their settlement efforts and resolve the issues the court had identified therein.  (Doc. No. 50 at 17.)

On May 18, 2021, plaintiffs filed the pending motion for approval of the parties' PAGA settlement, explaining that "[s]ince the Court's denial of the Plaintiffs' motion to approve the First Settlement Agreement, the Parties have discussed and agreed on how to address the Court's concerns and have finalized and signed an agreement that resolves Plaintiffs' PAGA claims," for which plaintiffs now seek court approval pursuant to California Labor Code § 2699(l)(2).  (Doc.

No. 54 at 4.)  On May 19, 2021, defendants filed a notice of non-opposition to the pending motion, stating that they "entered into the proposed settlement to resolve this litigation, and therefore support its approval by the Court," but "they vehemently deny any wrongdoing or liability in this matter and reserve all rights to contest the facts and legal analyses set forth in the Motion and supporting documents in the event that, for any reason, the settlement is not approved and litigation of Plaintiffs' claims resumes."  (Doc. No. 56 at 1.)

Plaintiffs also note in their pending motion that the parties "reached a private settlement agreement to resolve Plaintiffs' individual claims."  (Doc. No. 54 at 4.)  The parties provided the court with a copy of that private settlement agreement for the court's *in camera* review and for the court to determine whether to approve plaintiffs' settlement of their individual FLSA claim as a fair and reasonable resolution of a bona fide dispute.  *See Beidleman v. City of Modesto*, No. 1:16-cv-01100-DAD-SKO, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018); *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *see also Yue Zhou v. Wang's Rest.*, No. 5:05-cv-00279-PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007) ("The proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness.").  The court has reviewed the parties' private settlement agreement of plaintiffs' individual claims, which includes their individual FLSA claims, and finds that the agreement is a fair and reasonable resolution of the parties' bona fide dispute with regard to those claims.  The court now turns to the pending motion for approval of the parties' PAGA settlement agreement.

**THE PROPOSED PAGA SETTLEMENT**

According to the parties' PAGA settlement agreement ("the PAGA Agreement"), defendants will pay a gross settlement payment of $104,000.00 to resolve plaintiffs' PAGA claims as well as attorneys' fees and costs related to the PAGA claims.  (Doc. No. 54 at 6.) Subject to court approval, the gross settlement payment will include:  (1) up to $4,000.00 in

/////

/////

claims administration costs to the settlement claims administrator[1]; (2) $3,403.25 in plaintiffs' litigation costs related to plaintiffs' PAGA claims; (3) $20,596.75 in plaintiffs' attorneys' fees in connection with the prosecution of plaintiffs' PAGA claims; and (4) the remaining amount for the PAGA fund, to be divided 75 percent to the Labor and Workforce Development Agency ("LWDA") and 25 percent to the aggrieved employees ("the PAGA group"). (*Id.* at 6, 12–13.) The PAGA group is defined as:

> Plaintiffs and all current and former employees employed by Gold Coast Farms, LLC, Means Nursery, Inc. and All Ag, Inc. in a nonexempt position at Defendant Gold Coast Farms, LLC's Woodlake Location, located at 32701 Road 204, Woodlake, California 93286, from July 9, 2017 through the date the Court approves the settlement.

(Doc. No. 54-1 at 12.) There are approximately 206 aggrieved employees in the PAGA group. (Doc. No. 54 at 6.) The PAGA Agreement provides that the distribution of the 25% of the PAGA Fund to the PAGA group members will be done in accordance with Labor Code § 2699(i), on a *pro rata* basis based on the number of workweeks the member worked for defendants from July 9, 2017 through the date of court approval, relative to the total number of workweeks all PAGA group members worked during that time period. (Doc. Nos. 54 at 6; 54-1 at 12*.*)

The PAGA Agreement provides that, upon entry of the court's order approving the settlement:

> [All PAGA group members] and the State of California shall fully release and forever discharge defendants from any and all claims seeking penalties under Labor Code § 2698 *et. seq*. that were asserted in the Second Amended Complaint, which includes Labor Code §§ 201, 202, 226, 226.3, 510, 558, 1194, 1194.2, 1197, 1197.1, 2802, 8 Cal. Code Regs.§§ 11080, *et seq*., and Industrial Welfare Commission Wage Orders Nos. 8 and/or 13, against Defendants for the time period of July 9, 2017 through the [date of court approval].

(Doc. No. 54-1 at 14.) The PAGA Agreement states that "[i]t is also expressly understood and agreed that this limited release would not release Defendants from liability for, nor act as a waiver

---

[1] The PAGA Agreement provides that "[t]he Parties will mutually agree on the Settlement Administrator, with special consideration for Administrators with Spanish-speaking staff." (Doc. No. 54-1 at 14.)

4

of, any claims the nonparty PAGA Settlement Group Members may have or assert against Defendants for alleged violations of any statute other than PAGA." (Doc. No. 54-1 at 14.)

The PAGA Agreement also provides for non-monetary relief in the form of defendant Gold Coast agreeing "to continue to pay its current and future employees' overtime after eight hours in a workday and/or forty hours in a workweek;" to notify all new employees of this overtime policy in writing, in both English and Spanish; and to provide certification of this policy to plaintiffs' counsel on January 1, 2022. (Doc. Nos. 54 at 11; 54-1 at 14.)[2]

## LEGAL STANDARD

In 2003, the California Legislature enacted the Private Attorney General Act, California Labor Code §§ 2698 *et seq.*, after declaring: (i) that adequate financing of labor law enforcement was necessary to achieve maximum compliance; (ii) that staffing levels for state labor law enforcement agencies have declined and were unable to keep up with a growing labor market; (iii) that vigorous assessment and collection of civil penalties provides a meaningful deterrent to unlawful conduct; and (iv) that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to seek and recover civil penalties for Labor Code violations. 2003 Cal. Stat. 6629. Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of themselves and other current or former employees. Cal. Lab. Code § 2699(a).[3] A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). Accordingly, a judgment in a PAGA action "binds all those, *including nonparty aggrieved employees*, who would be bound by a judgment in an action brought by the

---

[2] Plaintiffs note in their motion that "[s]tarting January 1, 2023, all employers with 26 or more employees, including Defendant Gold Coast, will be required to pay agricultural workers subject to Wage Order 14 overtime after 8 hours in a workday and/or 40 hours in a workweek." (Doc. No. 54 at 11) (citing 8 C.C.R. § 11140(3) (*see* Dep't of Indus. Relations, *Overtime for Agricultural Workers*, https://www.dir.ca.gov/dlse/Overtime-for-Agricultural-Workers.html (Jan. 2019)).

[3] An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

5

government." *Id.* (emphasis added); *see also Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 381 (2014) ("When a government agency is authorized to bring an action on behalf of an individual or in the public interest, and a private person lacks an independent legal right to bring the action, a person who is not a party but who is represented by the agency is bound by the judgment as though the person were a party.").

The PAGA statute imposes a number of limits on litigants. First, because a PAGA action functions as a "substitute" for an action brought by the state government, a plaintiff suing under PAGA is limited to recovery of civil penalties only, rather than damages available privately through direct or class action claims. *Id.* Second, to bring an action under PAGA, an aggrieved employee must first provide written notice to the LWDA as well as to the employer. Cal. Lab. Code § 2699.3(a)(1). Third, any civil penalties recovered must be distributed as follows: 75 percent to the LWDA, and the remaining 25 percent to the aggrieved employees. *Id.* § 2699(i).

Finally, a trial court must "review and approve" any settlement of PAGA claims. *Id.* § 2699(*l*)(2).[4] There is no binding authority identifying the proper standard of review of PAGA settlements to be employed by the court. In the class action context, where PAGA claims often also appear, a district court must independently determine that a proposed settlement agreement is "fundamentally fair, adequate and reasonable" before granting approval. *See Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008). However, this is not a class action, and PAGA claims are intended to serve a decidedly different purpose—namely to protect the public rather than for the benefit of private parties. *See Arias*, 46 Cal. 4th at 986. The LWDA has provided some guidance regarding court approval of PAGA settlements. *See* California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement ("LWDA Comments"), *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul.

/////

/////

---

[4] The proposed settlement must also be submitted to the LWDA at the same time it is submitted to the court. *Id.*

6

29, 2016), ECF No. 736 at 2–3.[5]  In that case, where both class action and PAGA claims were covered by a proposed settlement, the LWDA stressed that

> when a PAGA claim is settled, the relief provided for under the PAGA [must] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court [must] evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*Id.*; *see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the same with approval).

Recognizing the distinct issues presented by class actions, this court is nevertheless persuaded by the LWDA's reasoning in *O'Connor* and therefore adopts its proposed standard in evaluating the PAGA-only settlement agreement now before the court.  Accordingly, the court will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate[6] in view of PAGA's public policy goals.  *See Tenorio v. Gallardo*, No. 1:16-cv-00283-DAD-JLT, 2019 WL 4747949, at *3 (E.D. Cal. Sept. 30, 2019).

## ANALYSIS

**A.   The PAGA Settlement**

PAGA's statutory requirements require that 75 percent of the civil penalties recovered by aggrieved employees must be allocated to the LWDA and 25 percent allocated to aggrieved employees.  Cal. Lab. Code § 2699(i).  As stated above, the PAGA Agreement in this case allocates the PAGA fund accordingly.  (*See* Doc. No. 54-1 at 12.)  Although the PAGA Agreement does not specify the dollar amounts for the PAGA fund's allocations, according to the

---

[5] *See also id.* at 3 ("The LWDA is not aware any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action.").

[6] The court's determination as to fairness, reasonableness, and adequacy may involve a balancing of several factors including but not limited to the following:  the strength of plaintiffs' claims; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; and the experience and views of counsel. *See Officers for Justice*, 688 F.2d at 625.

1 motion, the PAGA fund will total approximately $76,000.00 ($80,000.00 less the administration
2 costs of up to $4,000.00).  (Doc. No. 54 at 12.)  Thus, the claims administrator will pay 75
3 percent of the PAGA fund, or approximately $57,000.00 to the LWDA, with the remaining 25
4 percent, or $19,000.00, to be distributed among the aggrieved employees on a pro-rata basis.  (*See*
5 *id.*)  Plaintiffs' counsel Estella M. Cisneros has submitted a declaration in support of the pending
6 motion, in which counsel declares that plaintiffs mailed a written notice of their alleged California
7 Labor Code violations to the defendants and the LWDA on May 17, 2018 and have not heard any
8 response from the LWDA to date.  (Doc. No. 54-1 at 2, ¶ 11.)  In addition, attorney Cisneros
9 declared that plaintiffs simultaneously submitted their proposed PAGA Agreement to the LWDA
10 when plaintiffs submitted their motion to the court.  (*Id.*)

11 Plaintiffs' counsel declared that they calculated a total likely recovery, as of May 13,
12 2021, for the PAGA group on the PAGA claims to be $155,100.00 in penalties, and that this
13 calculation was based upon counsel's review of payroll documents (timesheets, daily payroll
14 reports, invoices) produced by defendants during discovery and also voluntarily provided by
15 defendants in connection with the settlement conference and settlement efforts.  (Doc. No. 54-1 at
16 3, ¶¶ 12–14.)  Based on this valuation, plaintiffs assert that the approximate $76,000.00 amount in
17 the PAGA fund represents a 49% recovery for the PAGA group members.  (Doc. No. 54 at 12.)

18 In addition to this monetary relief, as noted above, the PAGA Agreement includes
19 injunctive relief, in which defendant Gold Coast "agrees to continue to pay its current and future
20 employees' overtime after eight hours in a workday and/or forty hours in a workweek;" to notify
21 all new employees of this overtime policy in writing, in both English and Spanish; and to provide
22 certification of this policy to plaintiffs' counsel on January 1, 2022.  (Doc. No. 54-1 at 14.)

23 In light of the substantial amount of penalties to be paid under the PAGA fund
24 distribution, the inclusion of non-monetary relief in the PAGA Agreement, the lack of objection
25 from the LWDA despite being provided timely notice of the terms of this proposed settlement,
26 and the fact that individual PAGA group members are not precluded from bringing actions
27 against defendants to seek recovery for any alleged unpaid wages or actual damages for labor
28 code violations because of the limited release under the PAGA Agreement, the court concludes

8

that the parties' PAGA Agreement is fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals. *See O'Connor*, 201 F. Supp. 3d at 1132–33 (defining PAGA's goals as including "benefit[ting] *the public* by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance") (emphasis added).

**B.     Attorneys' Fees and Costs**

The court now turns to the attorneys' fees provision of the Agreement. The relevant provision of PAGA provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Lab. Code § 2699(g). Calculating attorneys' fees under this provision requires application of the lodestar. *See Steenhuyse v. UBS Fin. Servs., Inc.*, 317 F. Supp. 3d 1062, 1072 (N.D. Cal. 2018); *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (noting that "the fee setting inquiry in California ordinarily begins with the 'lodestar'"); *Margolin v. Reg'l Planning Comm'n*, 134 Cal. App. 3d 999, 1004 (1982) ("California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." ). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A district court should also exclude from the lodestar fee calculation any hours that were not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary. *See id.* at 434; *J & J Sports Prods., Inc. v. Napuri*, No. 4:10-cv-04171-SBA, 2013 WL 4428573, at *1 (N.D. Cal. Aug. 15, 2013).

In assessing fee applications, the reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work

performed by attorneys of comparable skill, experience, and reputation.'") (quoting *Chalmers*, 796 F.2d at 1210–11); *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009); *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). Typically, the "relevant legal community" is the forum district[7] and the local hourly rates for similar work should normally be employed. *Gonzalez*, 729 F.3d at 1205; *Prison Legal News*, 608 F.3d at 454; *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994).

The fee applicant bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Napuri*, 2013 WL 4428573, at *2.

---

[7] The court recognizes that judges in the Eastern District of California frequently distinguish between the Fresno and Sacramento communities in determining hourly rates. The general rule for awarding attorneys' fee rates, however, is that "the rates of attorneys practicing in the forum *district*" are used. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (emphasis added). The ultimate task of the court is to discern the "prevailing market rates in the relevant community." *See Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). This court has located no authority indicating that hourly rates for attorneys in Sacramento may not be used to guide the court's award of such fees in cases originating in Fresno, particularly in specialized fields of litigation. Again, the typical approach looks to the *district* in which the court sits. *See id.* at 1206 (noting the appropriate rate was "the market rate prevailing in the Central District of California"); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (using the "Northern District of California" as the relevant legal community); *Camacho*, 523 F.3d at 979 (same); *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991) (using the Western District of Washington as the relevant local community), *overruled on other grounds as recognized in Davis v. City & County of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992). *But see Vega v. Eatherford U.S. LP*, No. 1:14-cv-01790-JLT, 2016 WL 7116731, at *16 (E.D. Cal. Dec. 7, 2016) (concluding that within the Eastern District of California, the appropriate forum for determining the lodestar rate is the division of the district in which the case is filed) (quoting *Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011)). Finally, the undersigned would note that according to the Local Rules of this court, this is not a district court with separate divisions, as many are, but rather is a single district sitting in designated locations for venue purposes. *See* Eastern District of California Local Rule 120.

Here, the PAGA Agreement allocates 23 percent of the gross settlement payment, or $24,000.00, for an award of attorneys' fees and costs (comprised of $3,403.25 in litigation costs and $20,596.75 in attorneys' fees for time expended on plaintiffs' PAGA claims). (Doc. No. 54-1 at 11.) Accounting for just the requested amount of attorneys' fees, $20,596.75, this amount represents 19.8% of the gross settlement payment.

This requested amount, however, is significantly less than the plaintiffs' asserted lodestar of $133,155.00 for the prosecution and settlement of plaintiffs' PAGA claims. (*See* Doc. No. 54-1 at 7 ¶ 33.) Attached to her declaration, attorney Cisneros has provided billing records for plaintiffs' counsel that detail the hours spent on this action, the specific activity for each time entry, the attorney who performed that task, and the hourly rate for that attorney. (*See* Doc. No. 54-1 at 32–55.) As for the hourly rates employed by plaintiffs' counsel, attorneys at California Rural Legal Assistance, Inc. ("CRLA") (Doc. No. 54-1 at 5 ¶ 26), the court finds those rates ranging between $175 and $300 to be reasonable hourly rates in this district. *See, e.g.*, *In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 839 (E.D. Cal. 2016) (concluding that appropriate rates in this community are $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Sanchez v. Frito-Lay, Inc.*, No. 1:14-cv-00797-AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), *report and recommendation adopted*, (E.D. Cal. Aug. 26, 2015) (awarding rates of $275 to $350 for attorneys with between fourteen and twenty years of experience).[8]

As for the hours expended in connection with plaintiffs' PAGA claims, attorney Cisneros declares that she reviewed the time records, exercised billing judgment, and calculated that 381 hours "were reasonably necessary for the prosecution and settlement of [only] the PAGA claims." (*Id.* at 5–6, ¶¶ 28, 30.) In addition, to those 381 hours, attorney Cisneros also determined that plaintiffs' counsel spent "324.9 hours on the prosecution of Plaintiffs' individual claims and the PAGA claims at the same time," for which plaintiffs seek to include half, or 162.45 hours, in their

---

[8] The same finding would be supported were the court to apply California law in determining the appropriate rate.

11

lodestar. (*Id.* at 6, ¶ 31.) Accordingly, plaintiffs assert that their lodestar for the PAGA Agreement's allocation of attorneys' fees includes a total of 543.45 hours. (*Id.* at 7, ¶ 33.) The court finds that this is a reasonable number of hours, given the duration of this case, the extensive informal and formal discovery, including depositions, and the repeated efforts at settlement of this action. Applying each attorneys' respective hourly rates to the number of hours expended, plaintiffs calculate their lodestar to be $133,155.00. (*Id.*) Thus, the attorneys' fees sought in this case are fully supported by the lodestar cross check.

As for litigation costs attributed to the PAGA claims, attorney Cisneros similarly provided a spreadsheet of the costs incurred in this action and identified the costs related solely to plaintiffs' PAGA claim, and divided the remaining costs by half, for a total requested cost award of $3,403.25. The court has reviewed the supporting documentation provided by plaintiffs and concludes that these costs were reasonably incurred.

Accordingly, the court will approve the $24,000.00 in attorneys' fees and costs as requested by plaintiffs.

## CONCLUSION

For the reasons stated above,

1. Plaintiffs' unopposed motion for approval of the parties' PAGA settlement agreement (Doc. No. 54) is granted, and plaintiffs' counsel shall receive $24,000.00 in attorneys' fees and costs;

2. The parties are directed to effectuate all terms of the PAGA settlement agreement (Doc. No. 54-1 at 9–23) and any deadlines or procedures for distribution therein; and

/////
/////
/////
/////
/////
/////

3. Within thirty (30) days from the date of this order, the parties shall file either a stipulation signed by all parties to dismiss plaintiffs' individual claims pursuant to Rule 41(a)(1)(A)(ii), or a request to dismiss plaintiffs' individual claims pursuant to Rule 41(a)(2), or a joint status report indicating what plaintiffs' intentions are with regard to their individual claims.

IT IS SO ORDERED.

Dated: **July 22, 2021**

UNITED STATES DISTRICT JUDGE